David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| THOMSAS FOSKARIS, and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ. AND FOR RELIEF UNDER THE DECLARATORY JUDGMENT ACT, 15 U.S.C. § 2201**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to

insure fair and accurate reporting, promote efficiency in the banking system, and protect

consumer privacy.  Consumer reporting agencies ("CRAs") have assumed such a vital role in assembling and evaluating consumer credit; and the FCRA seeks to ensure that CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

2.  A central duty the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.  15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of several strictly defined "permissible purposes."  To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes.  15 U.S.C. § 1681e(a).

3.  A CRA can be liable for a third party's impermissible use of a consumer's credit information; and to escape liability, a CRA must do more than claim reliance on a third party's "general promise to obey the law." *Pintos v. Pacific Creditor's Ass'n*, 605 F.3d 665, 675-76 (9th Cir. 2009).  Instead, prior to providing a consumer's credit information to a third party, a CRA must first obtain a certification from each third party as to "the purposes for which [credit] information is sought," as well as a certification that that information "will be used for no other purpose."  15 U.S.C. § 1681e(a).  If a CRA has "reasonable grounds" to believe that information will not be used for a permissible purpose, it must not furnish a report to that third party.  15 U.S.C. § 1681e(a).

4.  Because CRAs often charge a fee to third parties to disclose a consumer's credit information, the FCRA's restrictions on disclosure – and imposition of liability for failure to disclose – prevent consumer reporting agencies from pursuing inappropriate monetary gains at the expense of a consumer's privacy.  Compliance with these requirements also

ensures that, prior to furnishing a consumer's credit information to any third party, a CRA has, or should have, a list of all of the permissible purposes for which each third party will use a consumer's private credit information.

5.    The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1).  The disclosed information must include an identification of each person who "procured" a consumer report for employment or another purpose.  15 U.S.C. § 1681g(a)(3).  The disclosure must also include "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer."  15 U.S.C. § 1681g(a)(5).  Disclosing sufficient information about these third parties – including the specific purpose for which they obtained the consumer's information – can assist consumers in determining whether their identity has been compromised, or whether a consumer reporting agency has made any disclosures for an impermissible purpose.

6.    The FCRA also entitles consumers to actively protect their privacy rights in cases of suspected identity theft.  Specifically, a consumer who believes he or she has been the victim of identity theft can submit a fraud alert to a consumer reporting agency.  15 U.S.C. § 1681c-1.  The consumer can either request that the fraud alert be imposed for a 90-day period, or for an extended period of seven years. 15 U.S.C. § 1681c-1(a)-(b).  In the event a consumer requests "extended" protection, a consumer reporting agency must remove the consumer from any list of third parties to whom the agency sends the consumer's information to extend firm offers of credit, and keep the consumer off of any

such a list for five years, unless the consumer requests otherwise. 15 U.S.C. § 1681c-1(b)(1)(B). After being notified of a fraud alert, a CRA must send notification of the alert to the consumer reporting agencies which report information on a nationwide basis. 15 U.S.C. § 1681c-1(a)(1)(B); *see* 15 U.S.C. § 1681a(p).

7.     After fraud notification, the FCRA provides the consumer additional rights to independently monitor their credit information to protect their privacy. Specifically, once notified of a consumer's fraud notification, a CRA must, within three days of the notification, provide the consumer with all of the disclosures required under 15 U.S.C. § 1681g. 15 U.S.C. §§ 1681c-1(a)(2), 1681c-1(b)(2). When a consumer requests that an "extended" fraud alert be placed on their files, the consumer is entitled to request two free disclosures under 15 U.S.C. § 1681g within the 12-month period following notification of a fraud alert. 15 U.S.C. § 1681c-1(b).

8.     Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen. And through semi-annual review of their consumer disclosures in the case of an "extended" alert, a consumer can periodically check to determine whether efforts to protect their identity after potential fraud have not been successful. Thus, the FCRA presupposes that consumers who detect fraud on their credit information should be permitted the opportunity to investigate the issues themselves and ascertain the extent of any suspected fraud.

9.     This lawsuit addresses the nexus between a consumer reporting agency's disclosure duties under 15 U.S.C. § 1681g, and its duties to respond to a fraud alert under 15 U.S.C. § 1681c-1 – and how failure to make a full and adequate disclosure of information in a

consumer's file following notification of a fraud alert damages consumers by implying that a subsequent disclosure of credit information to a third party was not made for one of the "permissible purposes" enumerated in 15 U.S.C. § 1681b.  Specifically, in its 15 U.S.C. § 1681g disclosures to consumers, Experian virtually always fails to adequately specify the type of "permissible purpose" for which it made a consumer's private credit information available to third parties.

10.     Exacerbating this failure, Experian is obligated to obtain a certification from each third party indicated the purpose for which a consumer's credit can be used pursuant to 15 U.S.C. § 1681e(a), and on information and belief maintains a record of such certifications.  Consequently, on information and belief Experian could provide the "permissible purpose" for each third party disclosure if it wished; indeed, on information and belief other "national" CRAs, such as Trans Union LLC ("Trans Union") and Equifax Information Services, LLC ("Equifax"), routinely provide greater specificity in their 15 U.S.C. § 1681g inquiry-related disclosures.  Experian, by failing to meet its peer standards, has either decided to willfully disregard its disclosure obligation under 15 U.S.C. § 1681g, or else has adopted unreasonable compliance procedures under 15 U.S.C. § 1681e(a).  Experian's failure to follow reasonable procedures has led to Experian's production of inadequate disclosures under 15 U.S.C. § 1681g.

11.     Experian's ambiguous third-party discloses lead consumers to believe that Experian continues to permit a consumer's privacy to be compromised, when the security of a consumer's information matters most.  This contravenes Experian's reporting duties under 15 U.S.C. §§ 1681c-1(a)(2) and (b)(2), and consequently violates 15 U.S.C. § 1681g because Experian's disclosures are inherently confusing and misleading to

ordinary consumers, and frustrate a consumer's Congressional right to independently investigate the presumed privacy breaches which triggered a fraud alert notification. These inadequate disclosures result in harm to Plaintiff in the form of actual damages, which include out-of-pocket expenses, as Plaintiff must take efforts to verify this information.

12.     Experian's failure to adequately specify the nature of these third-party disclosures also violates a consumer's statutory right to privacy because the consumer is deprived of the opportunity to "meaningfully authorize" the disclosures which have been made to third parties. *Cf., e.g.*, *Syed v. M-I LLC*, 846 F.3d 1034 (9th Cir. Jan. 20, 2017). By depriving Plaintiff of the permissible purpose for which each credit pull on its disclosures was made, Experian subjects each consumer to a concrete informational injury by making it impossible for the consumer to verify that the disclosure was made for a permissible purpose or not.

13.     Plaintiff Thomas Foskaris ("Mr. Foskaris" or "Plaintiff") brings this action on behalf of himself and a class of similarly situated individuals ("Class 1"), who submitted fraud alerts under 15 U.S.C. § 1681c-1, and for whom Experian violated 15 U.S.C. § 1681g when, after receipt of those requests, failed to adequately specify why Plaintiff's information was provided to third parties, or whether such disclosures were for a permissible purpose under 15 U.S.C. § 1681b. Plaintiff has been harmed by this failure and has suffered actual damages, including out-of-pocket expenses and lost time, in determining why these opaque credit pulls were made. Plaintiff has also suffered a concrete informational injury through Experian's failure to make full and adequate 1681g disclosures, as he was deprived of his ability to determine whether "meaningful"

authorization had been given to the third parties who obtained private credit information after imposition of a fraud alert.

14. Mr. Foskaris also seeks to represent a sub-class of individuals ("Class 2") for whom Experian violated 15 U.S.C. § 1681g when, after receipt of an "extended" fraud alert under 15 U.S.C. § 1681c-1(b)(1)(B), Experian failed to disclose the particular permissible purpose for why a consumer's credit information had been pulled after receipt of a fraud alert. Plaintiff has been harmed by this failure and has suffered actual damages, including out-of-pocket expenses and lost time, in determining why these opaque credit pulls were made. Plaintiff has also suffered a concrete informational injury through Experian's failure, as they were deprived if their ability to determine whether "meaningful" authorization had been given to the third parties who obtained private credit information after imposition of a fraud alert.

15. Although Mr. Foskaris's factual statement is necessarily detailed, these facts have been presented merely to illustrate how Experian's statutory violations result in concrete harm. When both of the fact patterns is distilled to its essence, specific commonalities emerge which form the basis for the class-wide allegations. Specifically, Plaintiff and both classes include (1) consumers who notified Experian of fraud, for which (2) Experian subsequently provided a consumer disclosure, which (3) did not specify the specific permissible purpose for why each third party credit disclosure had been made. The distinction between the two classes is that Class 1 relates to a fraud alert requested under 15 U.S.C. § 1681c-1(a)(1), and Class 2 relates to an "extended" fraud alert requested under 15 U.S.C. § 1681c-1(b)(1).

## JURISDICTION AND VENUE

16. This Court has federal question jurisdiction because this case arises out of violation of

7

federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

17.   This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

18.   Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

19.   Mr. Foskaris is a natural person residing in the County of Clark, State of Nevada.

20.   Mr. Foskaris and all putative Class 1 and Class 2 members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

21.   Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) because it regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Experian is doing business in Nevada with its principal place of business in Ohio.

22.   Additionally, Experian is a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

23.     Unless otherwise indicated, the use of Experian's name in this Complaint includes all
agents, employees, officers, members, directors, heirs, successors, assigns, principals,
trustees, sureties, subrogees, representatives, and insurers of Experian.

**EXPERIAN'S CONSUMER DISCLOSURES CONTAIN IDENTICAL INFORMATION**

24.     On information and belief, virtually all of Experian's 15 U.S.C. § 1681g disclosures to
consumers made after a fraud alert are uniformly presented, and contain identical
language and definitions.

25.     Material to this dispute are: (1) Experian's self-chosen presentation of "fraud alerts" on
consumer disclosure; (2) Experian's self-chosen definition of a "Hard Credit Pull" and
the information Experian chooses to disclose about each such pull; and (3) Experian's
self-chosen definition of a "Soft Credit Pull" and the information Experian chooses to
disclose about each such pull.

26.     Specifically, the difference in nomenclature Experian uses to describe Hard Credit Pulls
and Soft Credit Pulls creates a context in which the description and presentation of Soft
Credit Pulls is insufficiently ambiguous and undefined.

27.     Nothing prevents Experian from crafting full, complete, and accurate descriptions of the
information contained in its own consumer disclosures.  Experian's unilateral decision to
make opaque and incomplete presentations of this information, including descriptions of
the information it shares with third parties, is fundamentally misleading and confusing to
ordinary consumers, and violates 15 U.S.C. § 1681g.

*Experian's Presentation of Fraud Alerts*

28.     Experian provides a uniform system for defining and disclosing a "fraud alert" a
consumer's file.   Unless otherwise stated, Experian's presentation of fraud alerts is

identical on Mr. Foskaris's disclosures, and on information and belief is substantively similar in the Section 1681g disclosures of each member of Class 1 and Class 2.

29. Specifically, upon notification of a fraud alert, Experian places such notification on the top of a consumer's disclosure, prior to listing any positive or negative items. Experian introduces the "fraud alert" as a "Personal statement[] you've asked us to include," and states, "You've given us the following statement to include every time a company asks us for your credit report." This "fraud alert" contains the following language:

> ID SECURITY ALERT: FRAUDULENT APPLICATIONS MAY BE SUBMITTED IN MY NAME OR MY IDENTIY MAY HAVE BEEN USED WITHOUT MY CONSENT TO FRAUDULENTLY OBTAIN GOODS OR SERVICES. DO NOT EXTEND CREDIT WITHOUT [VERIFYING THE IDENTIY OF THE APPLICANT]. I CAN BE REACHED AT [CONSUMER'S CONTACT INFORMATION] THIS SECURITY ALERT WILL BE MAINTAINED FOR [AMOUNT OF TIME] BEGINNING [DATE].

30. This disclosure is misleading because it is highly doubtful that all consumers "ask" Experian to include the identical language of this statement.

31. Further, this "fraud alert" does not indicate that consumers will actually be removed from Experian's list of creditors who might provide the consumer with preapproved offers for credit. 15 U.S.C. § 1681c-1(b)(1)(B) requires such exclusion upon request of the consumer.

32. Further, this "fraud alert" gives no indication of how the identity of any applicant consumer would be "verified," such that the consumer could determine whether, and by whom, an account had been submitted fraudulently.

33. This "personal statement" is the only place where a "fraud alert" appears on Experian's Section 1681g disclosures to consumers.

34.     Experian's self-defined and avoidable obfuscation of information relating to any "fraud alert" renders its Section 1681g disclosures fundamentally misleading and confusing.

### Experian's Presentation of Hard Credit Pulls

35.     On Mr. Foskaris's consumer disclosures, Experian provides a list of credit inquiries which are "shared with others" (hereinafter, "Hard Credit Pulls"). On information and belief, this presentation is substantively similar in the Section 1681g disclosures of each member of Class 1 and Class 2.

36.     Experian explains that its list of Hard Credit Pulls includes "all the companies that have requested your credit information as a result of an action you took". Its list of Hard Credit Pulls includes "companies that have requested your credit information as a result of an action you took, such as applying for credit or financing or as a result of collection," which Experian explained that this list would be "shared with companies that receive your credit history."

37.     Experian explained that "examples" of Hard Credit Pulls "**include**: a real estate loan, a home mortgage loan, an auto loan," and "an applications for credit". Experian did not state that its "examples" of Hard Credit Pulls was non-exhaustive by adding the words "but not limited to" after "include." Thus, on information and belief, Experian means to state to consumers like Mr. Foskaris and others that its self-defined list of Hard Credit Pulls was exhaustive.

### Experian's Presentation of Soft Credit Pulls

38.     On Mr. Foskaris's Experian consumer disclosures, Experian includes a list of requests for the consumer's credit information which were "shared only with you" (hereinafter, "Soft

Credit Pulls").  On information and belief, this presentation is substantively similar in the Section 1681g disclosures of each member of Class 1 and Class 2.

39.     To attempt to explain the scope of these Soft Credit Pulls, Experian explains that "You may not have initiated the following inquiries, so you may not recognize each source," and that these requests were being disclosed to the consumers "only as a record of activities."  For these Soft Credit Pulls, Experian explained:

> We offer credit information about you to those with a permissible purpose, **such as**:
> - other creditors who want to offer you preapproved credit;
> - an employer who wishes to extend an offer of employment;
> - a potential investor in assessing the risk of a current obligation;
> - Experian Customer Assistance to process a report for you;
> - your current creditors to monitor your accounts (date listed may reflect only the most recent request);
> - an end user to complete your mortgage loan application;
> - insurance underwriting (auto or home).

40.     Unlike its list of Hard Credit Pulls, which used the self-limiting word "**include**," Experian introduces its list of Soft Credit Pulls with the phrase "**such as**," in order to introduce a non-exhaustive list of exemplars.

41.     Thus, based on Experian's own definitions, an ordinary consumer cannot even make an educated guess as to the general types of inquiries for which a Soft Credit Pull has been made.

42.     Exacerbating the problem of presenting an open-ended list, in the great majority of instances Experian fails to list any reason at all for why the credit pull was authorized. This makes it effectively impossible for any consumer to determine whether the pull was made for a permissible purpose – even if it is from an entity who appears elsewhere on a consumer's disclosure.

43. Indeed, on rare occasions Experian does list the reason for its Soft Credit Pull. Since Experian is obligated to verify that a credit pull is made for a permissible purpose, Experian has the ability to disclose the specific permissible purpose for which credit is pulled, but simply chooses not to do so.

44. Experian's purposeful obfuscation in turn frustrates a consumer's ability to determine whether any Soft Credit Pull resulted in an offer of credit to him or herself, or whether the offer was instead sent to a person who has stolen his or her identity – an issue of critical importance to a consumer concerned about fraud.

45. Experian's purposeful and avoidable obfuscation of information relating to any Soft Credit Pulls renders its Section 1681g disclosures fundamentally misleading and confusing.

## EXPERIAN FAILS TO DISCLOSE INFORMATION TO MR. FOSKARIS

### *Mr. Foskaris's Fraud Alert and April 15, 2016 Consumer Disclosure*

46. On April 15, 2016, Experian provided Mr. Foskaris with a copy of his consumer disclosure ("April 15, 2016 Consumer Disclosure"). The disclosure contained a "Kohls/Capone" account No. 0266983088XXXX, opened in March 2016 and first reported in April 2016 ("Kohls Account").

47. The April 15, 2016 Consumer Disclosure included a list of Hard and Soft Credit Pulls. This list included 25 Soft Credit Pulls. Experian gave no "reason" why any of these Soft Credit Pulls had been made.

48. Included in these 25 inquiries was a March 29, 2016 inquiry from Kohls ("March 29 Kohls Soft Credit Pull"). Because there was no specific reason given for this inquiry, and because Experian had not limited the scope of the "permissible purpose" for which a Soft

Credit Pull could be made, Mr. Foskaris had no way of knowing the particular purpose, if any, Kohls had when it acquired Mr. Foskaris's credit information on March 29, 2016.

49. Also included in these 25 inquiries was an April 3, 2016 inquiry from Verizon Wireless ("April 3, 2016 Soft Verizon Soft Credit Pull"). Because there was no specific reason given for this inquiry, and because Experian had not limited the scope of the "permissible purpose" for which a Soft Credit Pull could be made, Mr. Foskaris had no way of knowing the particular purpose, if any, Verizon Wireless had when it acquired Mr. Foskaris's credit information on March 29, 2016.

### The April 19, 2016 Consumer Disclosure and Placement of a Fraud Alert

50. On April 19, 2016, in connection with a consumer dispute previously submitted by Mr. Foskaris, Experian provided Mr. Foskaris with both dispute results ("April 19, 2016 Dispute Results") and his consumer disclosure ("April 19, 2016 Consumer Disclosure").

51. The April 19, 2016 Dispute Results included a "correction summary" attached to Mr. Foskaris's Consumer Disclosure, which indicated that "OTHER ITEMS DISPUTED ARE NOT CURRENTLY DISPLAYING ON YOUR PERSONAL CREDIT REPORT." Experian gave no explanation for what "items" were not displaying, nor has it ever provided Mr. Foskaris with a list of these non-displaying "items." Experian failed to include, in the "results" of Mr. Foskaris's dispute, that Experian had in fact added a fraud statement to his account.

52. However, the April 19, 2016 Consumer Disclosure nonetheless contained a statement "to include every time a company asks us for your credit report." The statement (hereinafter, "First Fraud Statement"):

14

ID SECURITY ALERT: FRAUDULENT APPLICATIONS MAY BE SUBMITTED IN MY NAME OR MY IDENTITY MAY HAVE BEEN USED WITHOUT MY CONSENT TO FRAUDULENTLY OBTAIN GOODS OR SERVICES. DO NOT EXTEND CREDIT WITHOUT FIRST VERIFYING THE IDENTITY OF THE APPLICANT. THIS SECURITY ALERT WILL BE MAINTAINED FOR 90 DAYS BEGINNING 04-15-16

53.   Thus, by including this in his April 19, 2016 Consumer Disclosure, Experian meant to convey to Mr. Foskaris that it had placed a "fraud alert" on his credit file.

54.   The April 19, 2016 Consumer Disclosure continued to include the Kohls Account.

55.   The April 19, 2016 Consumer Disclosure included a list of Hard and Soft Credit Pulls. This list included the March 29, 2016 Kohls Soft Credit Pull and the April 3, 2016 Verizon Soft Credit Pull.

56.   Also included in the list of Soft Credit Pulls was an April 15, 2016 inquiry from Kohls ("April 15, 2016 Kohls Soft Credit Pull"). Because Experian gave no specific reason for this inquiry, and because Experian had not limited the scope of "permissible purpose" for which this inquiry had been made, Mr. Foskaris had no way of knowing the particular purpose, if any, Kohls had when it acquired Mr. Foskaris's credit information on April 15, 2016.

57.   Additionally, because Mr. Foskaris had submitted a fraud alert to Experian and Experian had added his First Fraud Statement to his credit, Experian left Mr. Foskaris with the impression that Experian had continued to permit Kohls to access Mr. Foskaris's credit information even after he notified Experian that such a disclosure had not been authorized and could compromise his privacy.

### Experian's May 15, 2016 Fraud Notifications to Mr. Foskaris

58.   On May 15, 2016, Experian provided Mr. Foskaris notification that it had placed an extended fraud victim alert on his credit file ("May 15, 2016 First Fraud Alert Notification"). The May 15, 2016 First Fraud Alert Notification stated,

15

> As you requested, we have added an Extended Fraud Victim Alert to your credit report.  This message, which will remain on your credit report for seven years, alerts credit grantors that you are a victim of fraud and to verify your identity in case someone is using your information without your consent.  As an additional precaution, we have removed your name and address from prescreened offer mailing lists for five years.

59.    On May 15, 2016, Experian also sent Mr. Foskaris a second notification (Second May 15, 2016 Fraud Alert Notification"), which stated that "we received a copy of the identity theft report you provided; however, in order to process your request to block information in your personal credit report due to identity theft, we need additional information." Experian cautioned that "If you do not provide Experian with the required information . . . you will not have submitted a valid request to block information in your person credit report due to an identity theft and no information will be blocked."

60.    Experian provided no explanation for the patent contradictions between the First and Second May 15, 2016 Fraud Alert Notifications, which created the impression that Experian had both placed an extended fraud alert on Mr. Foskaris's credit file, and could not do so because Mr. Foskaris had failed to provide Experian with adequate notification.

***Experian's May 15, 2016 Dispute Results and Consumer Disclosure to Mr. Foskaris***

61.    Finally, on May 15, 2016, Experian provided Mr. Foskaris with the results of his request to submit a fraud alert ("May 15, 2016 Dispute Results") and his consumer disclosure ("May 15, 2016 Consumer Disclosure").

62.    The May 15, 2016 Dispute Results included a "correction summary" attached to Mr. Foskaris's May 15, 2016 Consumer Disclosure, which once again indicated that "OTHER ITEMS DISPUTED ARE NOT CURRENTLY DISPLAYING ON YOUR PERSONAL CREDIT REPORT."  Experian gave no explanation for what "items" were not displaying, nor has it ever provided Mr. Foskaris with a list of these non-displaying

16

"items." However, unlike the April 19, 2016 Dispute Results, the May 15, 2016 Dispute Results included, in the "results" of Mr. Foskaris's dispute, that Experian had in fact added a fraud statement to his credit file.

63. Mr. Foskaris's May 15, 2016 Consumer Disclosure also continued to include the First Fraud Statement, which indicated that "This Security Alert will be maintained for 90 days beginning 04-15-16."

64. Experian failed to provide Mr. Foskaris with any documentation explaining the inherently contradictory positions it took by (1) including the First Fraud Statement on his May 15, 2016 Consumer Disclosure, which indicated that the fraud alert would last only 90 days from April 15, 2016; (2) stating that it had in fact added an extended fraud alert to his May 15, 2016 Consumer Disclosure, but (3) stating that it needed more information to complete the fraud process and block information due to identity theft.

65. Experian failed to state anywhere on Mr. Foskaris's May 15, 2016 Consumer Disclosure that any seven-year fraud alert had been added, or that Mr. Foskaris's name and address had been removed from prescreened offer mailing lists for five years.

66. However, the May 15, 2016 Consumer Disclosure did not report the Kohls Account in its list of reported accounts. This left Mr. Foskaris with the impression that Experian had, despite its representations to the contrary, actually agreed with him that the Kohls Account had been fraudulently opened and had removed it from his credit file.

67. The April 15, 2016 Consumer Disclosure also included a list of Hard and Soft Credit Pulls. This list included the March 29, 2016 Kohls Soft Credit Pull and the April 3, 2016 Verizon Soft Credit Pull.

68. Based on Experian's contradictory statements regarding Mr. Foskaris's fraud alert, its representation that other information disputed was not "currently displaying" on Mr. Foskaris's credit file, and Experian's continued permission to allow unspecified Hard and Soft Credit Pulls after Mr. Foskaris submitted the First Fraud Alert to Experian, Mr. Foskaris was left with the impression that Experian had continued to permit his credit to be accessed by third parties for an impermissible purpose, in violation of his privacy rights under the FCRA.

69. Additionally, Experian's disclosures to Mr. Foskaris were inherently confusing and gave him an inadequate basis to determine why Experian had disclosed his credit to others.

### Experian's May 16, 2016 Consumer Disclosure to Mr. Foskaris

70. On May 16, 2016, Experian provided Mr. Foskaris with another copy of his consumer disclosure ("May 16, 2016 Consumer Disclosure").  Therein, Experian removed the First Fraud Statement, and replaced it with a statement which to once again "include every time a company asks us for your credit report."  The statement (hereinafter, "Second Fraud Statement"):

> ID FRAUD VICTIM ALERT FRAUDULENT APPLICATIONS MAY BE SUBMITTED IN MY NAME OR MY IDENTITY MAY HAVE BEEN USED WITHOUT MY CONSENT TO FRAUDULENTLY OBTAIN GOODS OR SERVICES.  DO NOT EXTEND CREDIT WITHOUT FIRST CONTACTING ME PERSONALLY AND VERIFYING ALL APPLICATION INFORMATION AT DAY OR EVENING.  THIS VICTIM ALERT WILL BE MAINTAINED FOR SEVEN YEARS BEGINNING 05-15-16.

71. Thus, although Experian had previously indicated to Mr. Foskaris that it had placed fraud alerts on his credit file, as of May 16, 2016, and based on inclusion of the Second Fraud Statement, Experian now clearly represented to Mr. Foskaris that it had placed an extended fraud alert on his credit file.

72.    As with all of Experian's prior disclosures to Mr. Foskaris, the May 16, 2016 Consumer Disclosure failed to state anywhere that Mr. Foskaris's name and address had been removed from prescreened offer mailing lists for five years.

73.    As with the May 15, 2016 Consumer Disclosure, the May 16, 2016 Consumer Disclosure did not report the Kohls Account.

74.    The May 16, 2016 Consumer Disclosure also included a list of Hard and Soft Credit Pulls.  This list included the March 29, 2016 Kohls Soft Credit Pull and the April 3, 2016 Verizon Soft Credit Pull.

### *Experian's July 21, 2016 Consumer Disclosure to Mr. Foskaris*

75.    On July 21, 2016, Experian provided Mr. Foskaris with another copy of his consumer disclosure ("July 21, 2016 Consumer Disclosure").

76.    The July 21, 2016 Consumer Disclosure contained the Second Fraud Statement, but again failed to include Experian's prior representation that it would exclude Mr. Foskaris's name and address from prescreened offer mailing lists for five years.

77.    As with the May 15, 2016 Consumer Disclosure, the July 21, 2016 Consumer Disclosure did not report the Kohls Account.

78.    The July 21, 2016 Consumer Disclosure also included a list of Hard and Soft Credit Pulls.  This list included the March 29, 2016 Kohls Soft Credit Pull and the April 3, 2016 Verizon Soft Credit Pull.

79.    In addition to these credit pulls, Experian included a new Soft Credit Pull from Kohls, dated May 20, 2016 ("May 20, 2016 Kohls Soft Credit Pull).  Again, the specific permissible purpose under which Kohls' acquired Mr. Foskaris's private credit information was not disclosed.

80.    This particular new credit pull from Kohls occurred after Experian (1) removed the Kohls Account from Mr. Foskaris's credit file, (2) represented to Mr. Foskaris that it would remove his name and address from a list of prescreened offer mailing lists for five years, and (3) placed the Second Fraud Statement on his credit file.

81.    However, the presence of the May 20 2016 Kohls Soft Credit Pull, without further explanation, suggested to Mr. Foskaris that Experian continued to permit third parties to access his private information without a permissible purpose – even after an extended fraud alert had been placed on his account.

82.    Experian has never made any additional disclosure to Mr. Foskaris explaining why it had removed the Kohls Account from his credit file, or whether instead the Kohls Account was being secretly reported to, and accessed by, third parties without Mr. Foskaris's knowledge.  Experian has never explained to Mr. Foskaris why it had permitted Kohls to continue to access his credit information on May 20, 2016, or whether Kohls had a permissible purpose for doing so.

83.    Moreover, Experian's failure to specify the nature of the May 20 2016 Kohls Soft Credit Pull left Mr. Foskaris in a state of confusion regarding whether Experian had taken adequate steps to protect Mr. Foskaris's credit, despite Mr. Foskaris's months-long effort to place such a notification on his credit file and Experian's eventual representations that it had done so.

### *Experian's Liability to Mr. Foskaris*

84.    Experian's failure to fully and adequately disclose the specific "permissible purpose" for which any Soft Credit Pull described herein had been made violated 15 U.S.C. § 1681g because it resulted in a disclosure which was confusing to Plaintiff.

85.  Experian's failure to fully and adequately disclose specific "permissible purpose" for which each Soft Credit Pull had been made violated 15 U.S.C. §§ 1681b and 1681e(a) because it constituted a failure to follow reasonable procedures to ensure that all disclosures of Plaintiff's personal credit information were made for a permissible purpose.

86.  Experian's failure to fully and adequately disclose specific "permissible purpose" for which each Soft Credit Pull had been made also violated 15 U.S.C. § 1681c-1 because Plaintiff had a Congressionally protected interest in guarding their privacy by receiving a full and adequate disclosure under 15 U.S.C. § 1681g.

87.  Experian's above-mentioned conduct was at least negligent.  Thus, Experian is liable to Plaintiff for damages under 15 U.S.C. § 1681o.

88.  On information and belief, Experian's above-mentioned conduct was also willful.  Thus, Experian is liable to Plaintiff for damages under 15 U.S.C. § 1681n.

89.  As a result of these failures, Plaintiff has suffered actual damages, including out-of-pocket expenses, as Plaintiff has been obligated to take efforts to verify this information and protect his privacy from future potential unauthorized disclosures.  Plaintiff has also suffered a concrete informational harm to his Congressionally protected privacy rights, all of which are cognizable under 15 U.S.C. § 1681o and 15 U.S.C. § 1681n.

90.  Plaintiff has been required to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result, recoverable under.  15 U.S.C. § 1681o, 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

## CLASS 1- DISCLOSURES REQUIRED UNDER 15 U.S.C. § 1681c-1(a)

91.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as
        though fully stated herein.

92.     Plaintiff brings this action on behalf of themselves and on behalf of all others similarly
        situated ("Class 1").

93.     Plaintiff represents, and is a member of Class 1, consisting of:

        All persons with addresses within the United States who within the past two (2)
        years (i) submitted, either directly or indirectly, initial fraud alerts to Experian, for
        which (ii) Experian subsequently issued the consumer a disclosure which
        contained a list of Soft Credit Pulls, but which (iii) did not describe the
        permissible purpose for which any Soft Credit Pull had been made.

94.     Experian and its employees or agents are excluded from Class 1.

95.     Plaintiff does not know the number of members in Class 1, but believes the Class 1
        members number in the thousands, if not more.  Thus, this matter should be certified as a
        Class action to assist in the expeditious litigation of this matter.

96.     Plaintiff and members of Class 1 were harmed by the acts of Experian in at least the
        following ways: Experian, either directly or through its agents, violated 15 U.S.C. §§
        1681b, 1681c-1(a), 1681e, and/or 1681g when, after receipt of a fraud notice from
        Plaintiff and Class 1 members, issued consumer disclosures to those individuals which
        listed a Soft Credit Pull that did not indicate the permissible purpose for which the Soft
        Credit Pull had been made.  Plaintiff and Class 1 members were damaged thereby
        because Experian's incomplete and misleading disclosures frustrated their efforts to
        ascertain and remedy instances of fraud which may have appeared on their consumer
        disclosures.  Plaintiff and Class 1 members also suffered a concrete informational injury

because Experian's disclosures, which Plaintiff and Class 1 members had a right to obtain under 15 U.S.C. § 1681c-1(a)(2), were ambiguous, incomplete, and made it impossible for Plaintiff and Class 1 members to verify that any disclosures of their personal credit information had been made for a permissible purpose or not.

97.    Notably, Experian's failure to make an adequate disclosure under 15 U.S.C. § 1681g of the "permissible purpose" for a Soft Credit Pull, or even adequately describe the types of "permissible purposes" for which a Soft Credit Pull could be made, would remain confusing and misleading to consumers even if the requesting third party appeared to be one for which Plaintiff and Class 1 members had a preexisting relationship, or had authorized.

98.    This class allegation seeks recovery of actual, statutory, and punitive damages on behalf of Class 1, declarations that Defendant's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs.  It expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

99.    The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The members of Class 1 can be identified through Experian's records or Experian's agents' records.

100.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class

predominate over questions which may affect individual Class members, including the following:

a.    Whether, within the two years prior to the filing of this Complaint, Experian or its agents violated 15 U.S.C. § 1681g when, after notification of a "fraud alert" 15 U.S.C. § 1681c-1(a), it made a disclosure to a consumer under 15 U.S.C. § 1681g which did not describe a list of Soft Credit Pulls;

b.    Whether Experian's policies and procedures to ensure compliance with 15 U.S.C. § 1681b were reasonable under 15 U.S.C. § 1681e(a); and

c.    Whether Plaintiff and Class 1 members were damaged thereby, and the extent of damages for such violations.

101.    Plaintiff is typical of Class 1 members in that he suffered harm resulting from Experian's failure to make an adequate and non-misleading disclosure.

102.    Plaintiff will fairly and adequately represent and protect the interest of Class 1 in that he has no interests antagonistic to any member of Class 1.

103.    Plaintiff and the members of Class 1 have all suffered irreparable harm as a result of Experian's unlawful and wrongful conduct; namely they each lost their congressionally guaranteed right to have a full and accurate disclosure under 15 U.S.C. § 1681c-1(a) and 15 U.S.C. § 1681g.  As a result, all Class 1 members have lost a benefit conferred on them by Congress, which can never be recovered.  Absent a class action, Class 1 will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Experian will likely continue such illegal conduct.  These actions will likely cause systematic deficiencies which continue to cause consumers to suffer from concrete informational harms.

104. Thus, Plaintiff and Class 1 members request, in addition to their claims for FCRA relief, a declaration from the Court that in failing to list the "permissible purpose" given for each Soft Credit Pull, Experian violated 15 U.S.C. § 1681g. Plaintiff and Class 1 members also request that Experian failed to follow reasonable procedures designed to avoid violations of 15 U.S.C. § 1681c and limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b, in violation of violation of 15 U.S.C. § 1681e(a). Such declarations will prevent Experian from engaging in similar conduct for other consumers in the future. Because of the size of the individual Class 1 member's claims, few, if any, of the Class 1 members could afford to seek legal redress for the wrongs complained of herein.

105. Class certification is also appropriate because Experian has acted on grounds generally applicable to Class 1, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

106. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

107. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Experian to comply with federal law. The interest of Class 1 members in individually controlling the prosecution of separate claims against Experian is small because the maximum statutory damages in an individual action for FCRA violations are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

108. Experian has acted on grounds generally applicable to Class 1.

**CLASS 2- DISCLOSURES REQUIRED UNDER 15 U.S.C. § 1681c-1(b)**

109.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.   Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated ("Class 2").

111.   Plaintiff represents, and is a member of Class 2, consisting of:

> All persons with addresses within the United States who within the past two (2) years (i) submitted, either directly or indirectly, extended fraud alerts to Experian, for which (ii) Experian subsequently issued the consumer a disclosure which contained a list of Soft Credit Pulls, but which (iii) did not describe the permissible purpose for which any Soft Credit Pull had been made.

112.   Experian and its employees or agents are excluded from Class 2.

113.   Plaintiff does not know the number of members in Class 2, but believes the Class 2 members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

114.   Plaintiff and members of Class 2 were harmed by the acts of Experian in at least the following ways: Experian, either directly or through its agents, violated 15 U.S.C. §§ 1681b, 1681c-1(b), 1681e, and/or 1681g when, after receipt of a fraud notice from Plaintiff and Class 2 members, issued consumer disclosures to those individuals which listed a Soft Credit Pull that did not indicate the permissible purpose for which the Soft Credit Pull had been made.  Plaintiff and Class 2 members were damaged thereby because Experian's incomplete and misleading disclosures frustrated their efforts to ascertain and remedy instances of fraud on their consumer disclosures.  Plaintiff and Class 2 members also suffered a concrete informational injury because Experian's disclosures, which Plaintiff and Class 2 members had a right to obtain under 15 U.S.C. §

1681c-1(b)(2), were ambiguous, incomplete, and made it impossible for Plaintiff and Class 2 members to verify that any disclosures of their personal credit information had been made for a permissible purpose or not.

115.    Notably, Experian's failure to make an adequate disclosure under 15 U.S.C. § 1681g of the "permissible purpose" for a Soft Credit Pull, or even adequately describe the types of "permissible purposes" for which a Soft Credit Pull could be made, would remain confusing and misleading to consumers even if the requesting third party appeared to be one for which Plaintiff or Class 2 members had a preexisting relationship, or had authorized.

116.    This class allegation seeks recovery of actual, statutory, and punitive damages on behalf of Class 2, declarations that Defendant's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs.  It expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class 2 definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

117.    The joinder of Class 2 members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The members of Class 2 can be identified through Experian's records or Experian's agents' records.

118.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class

predominate over questions which may affect individual Class 2 members, including the following:

      d.     Whether, within the two years prior to the filing of this Complaint, Experian or its agents violated 15 U.S.C. § 1681g when, after notification of a "fraud alert" 15 U.S.C. § 1681c-1(b), it made a disclosure to a consumer under 15 U.S.C. § 1681g which did not describe a list of Soft Credit Pulls;

      e.     Whether Experian's policies and procedures to ensure compliance with 15 U.S.C. § 1681b were reasonable under 15 U.S.C. § 1681e(a); and

      f.     Whether Plaintiff and Class 2 members were damaged thereby, and the extent of damages for such violations.

119.    Plaintiff is typical of Class 2 members in that he suffered harm resulting from Experian's failure to make an adequate and non-misleading disclosure.

120.    Plaintiff will fairly and adequately represent and protect the interest of Class 2 in he has no interests antagonistic to any member of Class 2.

121.    Plaintiff and the members of Class 2 have all suffered irreparable harm as a result of Experian's unlawful and wrongful conduct; namely they each lost their congressionally guaranteed right to have a full and accurate disclosure under 15 U.S.C. § 1681c-1(a) and 15 U.S.C. § 1681g. As a result, all Class 2 members have lost a benefit conferred on them by Congress, which can never be recovered. Absent a class action, Class 2 will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Experian will likely continue such illegal conduct. These actions will likely cause systematic deficiencies which continue to cause consumers to suffer from concrete informational harms.

122.  Thus, Plaintiff and Class 2 members request, in addition to their claims for FCRA relief, a declaration from the Court that in failing to list the "permissible purpose" given for each Soft Credit Pull, Experian violated 15 U.S.C. § 1681g.  Plaintiff and Class 2 members also request that Experian failed to follow reasonable procedures designed to avoid violations of 15 U.S.C. § 1681c and limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b, in violation of violation of 15 U.S.C. § 1681e(a).  Such declarations will prevent Experian from engaging in similar conduct for other consumers in the future.  Because of the size of the individual Class 2 member's claims, few, if any, of the Class 2 members could afford to seek legal redress for the wrongs complained of herein.

123.  Class certification is also appropriate because Experian has acted on grounds generally applicable to Class 2, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

124.  Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

125.  A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Experian to comply with federal law.  The interest of Class 2 members in individually controlling the prosecution of separate claims against Experian is small because the maximum statutory damages in an individual action for FCRA violations are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

126.  Experian has acted on grounds generally applicable to Class 2.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

127.    Plaintiff, Class 1, and Class 2 members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

128.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*, including but not limited to 15 U.S.C. § 1681b, 15 U.S.C. § 1681c-1, 15 U.S.C. § 1681e(a), and 15 U.S.C. § 1681g.

129.    As a result of each and every willful violation of the FCRA, Plaintiff, Class 1, and Class 2 members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Experian.

130.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff, Class 1, and Class 2 members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Experian.

131.    Plaintiff, Class 1, and Class 2 members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian from further engagement in the FCRA violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

## SECOND CAUSE OF ACTION
## REQUEST FOR DECLARATORY RELIEF
## 28 U.S.C. § 2201

132.    Plaintiff, Class 1, and Class 2 members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

133.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*

134.    Plaintiff and Class 1 members are entitled to a declaration from the Court that Experian failed to make full and complete disclosures pursuant to 15 U.S.C. § 1681g by describing the "permissible purpose" made for each and every Soft Credit Pull listed on Plaintiff's consumer disclosures after being notified of a fraud alert by a consumer under 15 U.S.C. § 1681c-1(a).  Such declarations will prevent Experian from engaging in similar conduct for other consumers in the future.  Because of the size of the individual Class member's claims, few, if any, of the Class members could afford to seek legal redress for the wrongs complained of herein.

135.    Plaintiff and Class 2 members are entitled to a declaration from the Court that Experian failed to make full and complete disclosures pursuant to 15 U.S.C. § 1681g by describing the "permissible purpose" made for each and every Soft Credit Pull listed on Plaintiff's consumer disclosures after being notified of a fraud alert by a consumer under 15 U.S.C. § 1681c-1(b).  Such declarations will prevent Experian from engaging in similar conduct for other consumers in the future.  Because of the size of the individual Class 2 member's claims, few, if any, of the Class 2 members could afford to seek legal redress for the wrongs complained of herein.

31

136.    Plaintiff, Class 1 and Class 2 members are entitled to a declaration from the Court that Experian failed to follow reasonable procedures designed to avoid violations of 15 U.S.C. § 1681b and limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b, in violation of violation of 15 U.S.C. § 1681e(a).

137.    Plaintiff, Class 1 and Class 2 members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian from further engagement in the FCRA violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

138.    Plaintiff, Class 1 and Class 2 members have incurred attorney's fees to prosecute this cause of action, and are entitled to reasonable attorney's fees and costs from Experian.

<strong><u>PRAYER FOR RELIEF</u></strong>

Plaintiff and Class members respectfully request the Court grant them the following relief against Defendant:

<strong><u>FIRST CAUSE OF ACTION</u></strong><br><strong><u>VIOLATION OF THE FAIR CREDIT REPORTING ACT</u></strong><br><strong><u>15 U.S.C. § 1681 ET SEQ. (FCRA)</u></strong>

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and under 15 U.S.C. § 1681(o)(a)(1) against Experian for each incident of negligent noncompliance of the FCRA;

- orders preliminarily and permanently enjoining Experian from engaging in the violations of the FCRA outlined above; and

32

- any other relief the Court may deem just and proper.

## SECOND CAUSE OF ACTION
## REQUEST FOR DECLARATORY RELIEF
## 28 U.S.C. § 2201

- A declaration from the Court that Experian's failure to disclose to Plaintiff and Class 1 members the "permissible purpose" for each Soft Credit Pull after receipt of notification under 15 U.S.C. § 1681c-1(a) violated 15 U.S.C. § 1681g;

- A declaration from the Court that Experian's failure to disclose to Plaintiff and Class 2 members the "permissible purpose" for each Soft Credit Pull after receipt of notification under 15 U.S.C. § 1681c-1(b) violated 15 U.S.C. § 1681g;

- orders preliminarily and permanently enjoining Experian from engaging in the violations of the FCRA outlined above;

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Experian for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and Class members are entitled to, and demand, a trial by jury.

Dated: February 20, 2017

Respectfully submitted,


*/s/ Miles N. Clark, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
matthew.knepper@knepperclark.com
miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Tel: (702) 880-5554
Fax: (702) 385-5518
dkrieger@hainesandkrieger.com

Attorneys for Plaintiff